Peter J. Bilinski
George S. Blasiak
Robert E. Purcell
Indranil Mukerji
Joseph B. Milstein, PhD
James R. Muldoon
Dana F. Bigelow◆
R. Stephen Rosenholm✱◆
Thomas T. Aquilla, PhD
William W. Habelt
Denis J. Sullivan

*Of Counsel*
Thomas J. Wall
Owen D. Marjama
Joel Stettenheim✱✱
Michael D. Pinnisi

✱ Admitted in Pennsylvania, Ohio
   and Nebraska
✱✱ Admitted in Massachusetts



# WALL
# MARJAMA &
# BILINSKI LLP
*An Intellectual Property Practice*

101 South Salina Street, Suite 400
Syracuse, New York 13202

Telephone:  (315) 425-9000
Facsimile:   (315) 425-9114
Web Site:  *www.wmb-iplaw.com*
E-mail: rpurcell@cny-iplaw.com



U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
FEB 2  2005
AT_____O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse

February 24, 2005

Magistrate Judge George Lowe
U.S. District Court
Northern District of New York
United States Courthouse
100 South Clinton Street
P.O. Box 7367
Syracuse, NY 13261-7367

**BY HAND DELIVERY**

**Re:    Webb et al v. Mikohn Gaming Corp. et al.**
**Case No. 5:05-MC-13**
**Our File No. 1050_079**

Dear Judge Lowe:

I write in response to Mr. Crawford's February 8, 2005 letter[1] regarding potential sanctions against him for his failures to comply with the Court's January 28, 2005 Order to (1) file a Response to the motion to quash the Subpoena by February 1, 2005 and (2) attend a telephonic hearing the following morning. Ignoring the courtesy that I and my colleague Mr. Bennett showed Mr. Crawford in our letters to the Court attempting to mitigate Mr. Crawford's failures, Mr. Crawford has chosen to falsely blame me for his failures by conjuring up a so-called eight page "summary of the facts" replete with errors and misstatements that unjustifiably impugn my character and professional reputation. Thus, I feel obliged to respond to Mr. Crawford's allegations. But rather than burden this Court with a blow-by-blow response to each of Mr. Crawford's personal attacks, I will instead limit my comments to the substance of Mr. Crawford's letter.

---

1 I apologize for the apparent delay in replying to Mr. Crawford's letter. Despite my repeated requests to Mr. Crawford for a copy of his letter, more than one week passed before I received a copy of the letter and the voluminous set of exhibits. By that time, I was unavailable to respond promptly to the letter because of other professional and personal obligations.

WALL MARJAMA & BILINSKI LLP

Magistrate Judge George Lowe
February 24, 2005
Page 2

First and foremost, it should be noted that Mr. Crawford's lengthy letter fails to address the direct questions posed by your Honor and repeated in the letter's first paragraph: "why [Mr. Crawford] should not be sanctioned under FED. R. CIV. P. 45(c) for not giving this Court notice that the events in the underlying litigation in Mississippi had mooted the need for a response brief to Mr. Purcell's motion to quash the subpoena, and for not being available for the scheduled 9 a.m. phone conference on Mr. Purcell's motion to quash." (Letter at 1) Even if this Court were to accept Mr. Crawford's "summary of the facts", these "facts" do not explain or justify why Mr. Crawford did not comply with his professional responsibilities to this Court by providing the proper notice and by attending the hearing.

Mr. Crawford does not deny that he received a copy of the Court's order dated January 28, 2005 setting a deadline for Mr. Crawford to file a response to the motion to quash and scheduling the telephonic hearing.

Mr. Crawford alleges that he "learned that Mr. Purcell was not an independent third-party deponent" and therefore that the subpoena was unnecessary *even before he received the motion to quash*. (Letter at 2) Yet Mr. Crawford did not withdraw the (unnecessary) subpoena, but persisted in abusing the process of trying to enforce the subpoena. In attempting to explain why he failed to notify the Court of the fact that he never intended to file a response to the motion to quash — notice that would have eliminated the need for your Honor to arrive early for the 9:00 a.m. hearing — Mr. Crawford claims that as of January 27, 2005, *five days before* his response was due, he was told by another attorney at his law firm that "the deal had closed for the Purcell deposition." (Letter at 6) Thus, assuming *arguendo* the truth of these facts, Mr. Crawford admits that even though he intended not to file a response, he failed to notify this Court or me of his plan.

In attempting to explain why he failed to appear for the 9:00 a.m. telephonic hearing on February 2, 2005, Mr. Crawford essentially argues that because he did not hear from me, he was under no obligation to appear for the hearing, despite the fact that this Court's January 28, 2005 Order commanded his presence. Furthermore, Mr. Crawford attempts to justify his absence by arguing that I should have been aware of the parties' agreement that was not even signed until February 1, 2005 — the day his response was due — to immediately withdraw the motion to quash. But even if I were aware of this agreement and had formally withdrawn the motion to quash before the date of the hearing, I certainly did not have the authority to cancel a hearing that had been ordered by this Court. Thus, despite the admitted fact that he heard nothing from me or this Court about the hearing being canceled, Mr. Crawford made no attempt to ascertain the status of the matter and simply ignored the hearing, wasting your time and mine.

Perhaps realizing the inability to justify his behavior, with his letter, Mr. Crawford filed what appears to be a belated and moot response brief to what he refers to as my "precipitous and inappropriate motion to quash." (Letter at 8) One need look no further than the extensive negotiations that took place *after* my motion was filed regarding the scope and terms of my

Magistrate Judge George Lowe
February 24, 2005
Page 3

deposition, terms which largely reflected the relief sought in my motion, to understand that my motion was in fact necessary and appropriate under the circumstances.

Finally, rather than defend his own questionable actions as he was asked to do by this Court, Mr. Crawford has instead decided to use this forum to attack my professional reputation. Mr. Crawford contends that not only I, but also (1) both inventors on the patents involved in the Mississippi litigation, (2) a prior, unrelated patent attorney who handled the prosecution of the patents for approximately five years before I was involved, and (3) four individuals (one of whom is an unrelated, well respected attorney specializing in gaming law) who signed declarations in connection with the patent applications being handled by the prior patent attorney, all committed fraud on the Patent Office. Mr. Crawford also contends that a previous patent infringement action against the Plaintiffs where I served as lead counsel was also a baseless sham. Mr. Crawford's allegations are scurrilous, and but for the fact that they are contained in court pleadings, would be actionable as defamatory and libelous. To put the matter in perspective, I present the following facts:

- From about 1992 through 2001, I served as lead counsel in several patent infringement lawsuits involving a series of so-called jackpot patents relating to casino games against tens of defendants, including several large, publicly traded companies. One of the lawsuits was filed in Nevada against entities that are now the Plaintiffs in the currently pending Mississippi antitrust lawsuit.

- In the sole patent infringement case involving the jackpot patents that went to a decision after trial (in 1994), the patent owner prevailed in obtaining a jury verdict of patent infringement liability against the defendants, which included a huge casino and a publicly traded company. That lawsuit was settled before the bifurcated damages phase.

- One of the accused infringers of the jackpot patents that was a defendant in several of the lawsuits, Shuffle Master, a large, publicly traded company, initiated re-examination proceedings in the Patent Office with respect to three of the jackpot patents, contending that certain prior art rendered the patents invalid. After a re-examination process lasting about five years through the mid and late 1990s, the Patent Office determined that every single claim of each of the patents was valid in view of the tens of pieces of prior art submitted and considered.

- There was never a holding in any of the lawsuits by summary judgment, final judgment, or otherwise that even a single claim of any of the jackpot patents asserted was invalid or not infringed or that any patent asserted was unenforceable or procured by fraud on the Patent Office.

- The Nevada patent infringement lawsuit against the Plaintiffs was filed in December 1998. Even though Mr. Crawford now claims that the lawsuit was a "sham enforcement suit"

WALL MARJAMA & BILINSKI LLP

Magistrate Judge George Lowe
February 24, 2005
Page 4

(Letter at 2), Plaintiffs did not even *file* a motion for summary judgment in that lawsuit, which lasted a year and then was settled by the grant of a patent license.

I would like to thank this Court for the opportunity to correct some of the material misstatements made by Mr. Crawford in his inflammatory letter and ask that Your Honor give due weight to the information presented above in determining whether the Court believes sanctions are appropriate.

Although my prior letter to the Court regarding the sanctions issue was conciliatory and implied that leniency or forgiveness should be considered, Mr. Crawford's recent letter demonstrates a persistent rabidity in his approach to litigation. His apology to the Court is hollow, and he seeks to blame everything and everyone except himself. An award of sanctions might persuade Mr. Crawford to change his behavior so that it complies with the standards of our profession.

Respectfully submitted,

WALL MARJAMA & BILINSKI LLP

Robert E. Purcell

REP/cmn
c: Allan Bennett, Esq. (via First Class Mail & facsimile)
   Michael Crawford, Esq. (via First Class Mail & facsimile)